UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BASANT GAJJAR,<br><br>　　　　　Defendant. | Case No. 4:20-cv-02429-KAW<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 32 |

On March 8, 2021, Defendant Basant Gajjar filed a motion to dismiss Plaintiffs' complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

Upon review of the moving papers and the supplemental briefing, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, DENIES Defendant's motion to dismiss.

## I.　BACKGROUND

On April 9, 2020, Plaintiffs Facebook, Inc. and Instagram, LLC filed a civil action against Defendant Basant Gajjar (d/b/a LeadCloak) for breach of contract. (Compl., Dkt. No. 1.) Specifically, Plaintiffs allege that, since May 2016, as the founder and system architect of "LeadCloak," Defendant Basant Gajjar enabled and assisted fraudulent advertisers in circumventing Facebook's advertisement review process using a technique known as "cloaking." (Compl. ¶ 1.) Cloaking is used to hide from Plaintiffs the true nature of the website linked to an ad, while presenting different content to users who clicked on the ad. *Id.* Defendant allegedly developed, marketed, and sold cloaking software and services that prevented Plaintiffs from reviewing the true landing pages for ads posted on Plaintiffs' platforms. *Id.* Defendant's actions prevented Plaintiffs from detecting and rejecting deceptive, harmful, and otherwise improper ads

1    with landing pages that promoted, among other things, deceptive diet pills and pharmaceuticals,

2    cryptocurrency investment scams, and misinformation about the economic impact of COVID-19.

3    (Compl. ¶¶ 1-2.)

4        On March 8, 2021, Defendant filed a motion to dismiss for lack of personal jurisdiction.

5    (Def.'s Mot., Dkt. No. 32.)  On March 22, 2021, Plaintiffs filed an opposition. (Pls.' Opp'n, Dkt.

6    No. 36.)  On March 29, 2021, Defendant filed a reply. (Def.'s Reply, Dkt. No. 39.)

7        On May 4, 2021, the Court vacated the hearing on the instant motion to dismiss and

8    granted Plaintiffs' request for leave to conduct jurisdictional discovery. (Dkt. No. 40.)  In its order,

9    the Court advised the parties that it expected supplemental briefing if, after the conclusion of the

10   jurisdictional discovery, the parties believed that the motion still required resolution. *Id.* at 2.

11   Since then, the Court has approved three stipulations extending the deadline to conduct

12   jurisdictional discovery, which were sought because the parties were engaging in settlement

13   negotiations. (Dkt. Nos. 42, 45, 47.)

14       Those negotiations were ultimately not fruitful, and, after the undersigned resolved some

15   discovery disputes, Plaintiffs filed a supplemental brief on January 14, 2022. (Dkt. No. 66.)  On

16   January 21, 2022, Defendant filed a supplemental brief. (Def.'s Suppl. Br., Dkt. No. 67.)  On

17   February 25, 2022, Plaintiffs filed a corrected supplemental brief. (Pls.' Suppl. Br., Dkt. No. 72-

18   1.)

19           **II.   LEGAL STANDARD**

20       Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim

21   for lack of personal jurisdiction.  The plaintiff bears the burden of demonstrating that the court has

22   jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800

23   (9th Cir. 2004).  "Where, as here, a motion to dismiss is based on written materials rather than an

24   evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts."

25   *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010).  To make a prima facie

26   showing, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the

27   defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  "Uncontroverted allegations

28   in the complaint must be taken as true, and conflicts over statements contained in affidavits must

be resolved in [the plaintiff's] favor." *Love*, 611 F.3d at 608.

### III.   DISCUSSION

Plaintiffs allege that Defendant is subject to personal jurisdiction based on his multiple Facebook and Instagram accounts, which require users to agree to Instagram's Terms of Use and Facebook's Terms of Service as a condition of creation and use. (Compl. ¶ 8.) The Terms include a forum selection clause, in which the user agrees to submit to the personal jurisdiction of the U.S. District Court for the Northern District of California for any claims brought against them. (Compl. ¶ 8.) Defendant also is alleged to have had multiple advertising accounts, which requires agreement to Facebook's Commercial Terms. *Id.* The Commercial Terms also include a provision consenting to personal jurisdiction in this district. *Id.*

In moving to dismiss for lack of personal jurisdiction, Defendant argues that Facebook's Terms of Service ("Terms") are insufficient to establish personal jurisdiction, because his assent for his personal accounts is "entirely unrelated to this case or LeadCloak" and the "overreaching jurisdiction clause is inherently unreasonable." (Def.'s Mot. at 7-8.) In opposition, Plaintiffs argue that Defendant consented to personal jurisdiction when he created and maintained Facebook accounts, thereby agreeing to the Terms' forum selection clause. (Pl.'s Opp'n at 9.) The Court permitted Plaintiffs to conduct jurisdictional discovery, in part, to address Defendant's connection to SlingFile and LeadCloak. (*See* Dkt. No. 40.)

#### A.   Bajjar's connection to SlingFile and LeadCloak

In his interrogatory responses, Defendant acknowledged that he is "both a one hundred percent (100%) owner and is the only employee/director for SlingFile Limited." (Corrected Decl. of Jeff R. R. Nelson, "Corrected Nelson Decl.," Dkt. No. 72-2 ¶ 5, Ex. D at 33.) Moreover, "Slingfile Limited has owned and operated the website LeadCloak.com from the date it went live to the public in May 2018 until present day. LeadCloak is not a dba of Responding Party, Basant Gajjar, personally." *Id.*

While Defendant argues that he is a separate entity, a corporate officer or director can be held personally liable for the torts of the corporation if they participated in the wrong or authorized or directed that it be done. *Schwartz v. Pillsbury Inc.*, 969 F.2d 840, 843 (9th Cir. 1992).

1  Moreover, the corporate veil only shields an officer or director from liability if they are not
2  actively involved with the tortious conduct. *See Ultratech, Inc. v. Ensure NanoTech (Beijing),*
3  *Inc.*, 108 F. Supp. 3d 816, 824 (N.D. Cal. 2015).  Thus, Defendant's argument that he is not doing
4  business as LeadCloak does not absolve him of potential liability, because his alleged actions as a
5  corporate officer of SlingFile expose him to individual liability.

6  **B.   Forum Selection Clauses**

7   A defendant may consent to a court's personal jurisdiction through a forum selection
8  clause, provided the defendant "agrees to be so bound." *Holland Am. Line Inc. v. Wartsila N. Am.,*
9  *Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (citations omitted).  Moreover, "courts have found
10 personal jurisdiction based on consent to forum selection clauses contained in internet websites'
11 terms of use." *Twitch Interactive, Inc. v. Johnston*, Case No. 16-cv-3404-BLF, 2018 U.S. Dist.
12 LEXIS 184300, at *10 (N.D. Cal. Jan. 22, 2018).  Forum selection clauses are to be specifically
13 enforced unless the party opposing the clause clearly shows "that enforcement would be
14 unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."
15 *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 512 (9th Cir. 1988) (internal quotation and
16 citation omitted).  Courts have held that Facebook's forum selection clause is not fraudulent or
17 overreaching and that it otherwise comports with fundamental fairness. *Thomas v. Facebook, Inc.,*
18 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) (citing *Dolin v. Facebook, Inc.*, 289 F. Supp.
19 3d 1153, 1159-60 (D. Haw. 2018) (collecting cases)); *see also Franklin v. Facebook, Inc.*, 2015
20 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839
21 (S.D.N.Y. 2012).

22  **i.   Terms of Service and Defendant's accounts**

23  Here, Facebook has terms of service for consumers based on where they are located in the
24 world, as well as Commercial Terms for all users using or accessing Facebook for any business or
25 commercial purpose. (Decl. of Michael P. Duffey, "Duffey Decl.," Dkt. No. 36-3 ¶¶ 3-5.)  Both
26 the Consumer Terms that applied to users in India and Thailand, for the period of July 31, 2019
27 through September 30, 2020, and the Commercial Terms, for the period of May 25, 2018 through
28 August 30, 2020, contain a forum selection clause that requires the user to consent to personal

4

1   jurisdiction in the U.S. District Court for the Northern District of California for any claims brought
2   by Facebook. (Consumer Terms, Duffey Decl. ¶ 7, Ex. A at 9; Commercial Terms, Duffey Decl. ¶
3   8, Ex. B at 1.)  Defendant concedes that Instagram's Terms is similar. (*See* Def.'s Mot. at 6.)
4        Defendant has created four Facebook accounts. (Pls.' Opp'n at 10; Decl. of Andrew
5   Herter, "Herter Decl.," Dkt. No. 36-2 ¶¶ 5-9.)  These include three personal accounts and one
6   Facebook business account for Slingfile Limited with an email address (basant@slingfile.com)
7   and phone number with a San Francisco area code (4158299419). (Herter Decl. ¶¶ 5-9.)
8   Defendant also has two Instagram accounts. (Herter Decl. ¶¶ 10-11.)  The three personal Facebook
9   accounts controlled four Facebook ad accounts. (Herter Decl. ¶ 19.)
10       Defendant's claim that his personal accounts are unrelated to LeadCloak is contradicted by
11  his own Facebook post. (*See* Def.'s Mot. at 8-9.)  Indeed, on May 11, 2018, Defendant used the
12  personal Facebook account created while attending California State University, Sacramento
13  ("Account 1") to promote LeadCloak. (Herter Decl. ¶¶ 5-6.)  Therein, Defendant shared the beta
14  link and stated that "LeadCloak supports cloaking all major ad networks including Adwords and
15  Facebook." *Id.* ¶ 6.

16       **ii.   Forum Selection Clauses are not overreaching**

17       Finally, Defendant argues that the forum selection clauses are overreaching because he
18  resides in Thailand, and it is inherently unreasonable to require international users to defend
19  themselves in the Northern District. (Def.'s Mot. at 9.)  Courts in this district, however, have
20  found that international defendants' consent to the forum selection clause in the Terms of Service,
21  and the latter's "prohibitions against unlawful conduct … and third-party developers' use of tools
22  to deceive other users[,] are not overreaching, do not deprive users access to their day in court,
23  contravene any public policy, or fail to comport with fundamental fairness." *Facebook, Inc. v.*
24  *Sluchevsky*, No. 19-CV-01277-JSC, 2020 WL 5823277, at *2 (N.D. Cal. Aug. 28, 2020), report
25  and recommendation adopted, 2020 WL 5816578 (N.D. Cal. Sept. 30, 2020); *see also* Report and
26  Recommendation, *Facebook, Inc. v. ILikeAd Media International Company Ltd.,* No. 19-cv-
27  07971-SK (N.D. Cal. Feb. 1, 2022), ECF No. 66 at 4.
28       Additionally, in his supplemental brief, Defendant argues that it would be overreaching to

find "that any employee worldwide who previously accepted Facebook's Terms could be subject to California's jurisdiction for the alleged actions of their company or its customers." (Def.'s Suppl. Br. at 6.) While the undersigned might tend to agree, here, Defendant was the sole owner and director of Slingfile, which owns LeadCloak, and used at least one of his personal Facebook accounts to promote LeadCloak. He also created a commercial account for SlingFile. Thus, this is not a situation where, if the allegations are proven true, Defendant's acceptance of the Terms is wholly unrelated to his company or customers. Even so, SlingFile contracted with Cloudflare to obtain domain name service for LeadCloak. (Cloudflare Billing Account Details, Corrected Nelson Decl. ¶ 3, Ex. A.)[1] In doing so, SlingFile agreed to Cloudflare's terms of use with a forum selection clause consenting to personal jurisdiction in this district, which is sufficient for an independent finding of personal jurisdiction over SlingFile. *See Binbit Argentina, S.A. v. Does 1-25*, No. 19-CV-05384-KAW, 2021 WL 4497873, at *1 (N.D. Cal. Jan. 21, 2021) (Personal jurisdiction existed over doe defendants who used Cloudflare's hosting services based on the forum selection clause in Cloudflare's Terms.)

Accordingly, the Court finds that Defendant agreed to be bound to the Terms of Services' forum selection clauses through his use of Facebook and Instagram. Thus, Plaintiffs have sufficiently alleged that Defendant agreed to be bound by the terms that subject Defendant to the personal jurisdiction of this Court. (*See* Compl. ¶ 8.)

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED. Defendant shall file an answer within 28 days.

IT IS SO ORDERED.

Dated: March 2, 2022

                                                                   _Kandis Westmore_
                                                                   KANDIS A. WESTMORE
                                                                   United States Magistrate Judge

---

[1] The Court notes that Defendant Gajjar personally created the SlingFile account for LeadCloak and used his personal credit cards and PayPal account to pay for these services. (*See* Pl.'s Suppl. Br. at 2 (citing Corrected Nelson Decl., Ex. A.))

6