UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BASANT D. GAJJAR,<br><br>　　　　Defendant. | Case No. 4:20-cv-02429-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS; ORDER GRANTING IN PART MOTION TO STRIKE DEFENDANT'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**<br><br>Re: Dkt. Nos. 78 & 83 |

On April 20, 2022, Plaintiffs Meta Platforms, Inc. (f/k/a Facebook, Inc.) and Instagram, LLC filed a motion to dismiss Defendant Basant D. Gajjar's counterclaims. On April 29, 2022, Plaintiffs filed a motion to strike Defendant's counterclaims, in the alternative, and to strike his affirmative defenses.

On June 16, 2022, the Court held a hearing, and, for the reasons set forth below, GRANTS Plaintiffs' motion to dismiss and GRANTS the motion to strike as to the affirmative defenses, while DENYING the motion to strike the counterclaims as moot.

## I.　BACKGROUND

On April 9, 2020, Plaintiffs filed a civil action against Defendant Basant Gajjar (d/b/a LeadCloak) for breach of contract. (Compl., Dkt. No. 1.) Specifically, Plaintiffs allege that, since May 2016, as the founder and system architect of "LeadCloak," Defendant enabled and assisted fraudulent advertisers in circumventing Facebook's advertisement review process using a technique known as "cloaking." (Compl. ¶ 1.) Cloaking is used to hide from Plaintiffs the true nature of the website linked to an ad, while presenting different content to users who clicked on the ad. *Id*. Defendant allegedly developed, marketed, and sold cloaking software and services that prevented Plaintiffs from reviewing the true landing pages for ads posted on Plaintiffs' platforms.

*Id.* Defendant's actions allegedly prevented Plaintiffs from detecting and rejecting deceptive, harmful, and otherwise improper ads with landing pages that promoted, among other things, deceptive diet pills and pharmaceuticals, cryptocurrency investment scams, and misinformation about the economic impact of COVID-19. (Compl. ¶¶ 1-2.) These actions violated Plaintiffs' terms and policies that he agreed to, including the Facebook Terms of Service, Commercial Terms, Instagram Terms of Use, and Facebook's Advertising Policy and Self-Service Ad Terms (collectively, the "Terms"). As part of the Terms, Gajjar promised Plaintiffs, among other things, that he would not engage in any unlawful, misleading, or fraudulent conduct in connection with Plaintiffs' platforms—such as to circumvent Plaintiffs' ad review process—or facilitate or support others to do the same. (Compl. ¶¶ 24-31.)

Defendant, while represented by counsel, filed a motion to dismiss for lack of jurisdiction, which was denied on March 2, 2022. (Dkt. No. 73.) Defendant's attorneys were permitted to withdraw, and Defendant filed his notice of appearance on March 30, 2022, and he is now proceeding pro se. Also on March 30, 2022, Defendant filed an answer alleging 32 affirmative defenses and attached a separate pleading containing 13 counterclaims. (Def.'s Answer, Dkt. No. 77 at 1; Def.'s Counter-Compl., Dkt. No. 77 at 21.)

On April 20, 2022, Plaintiffs filed a motion to dismiss Defendant's counterclaims. (Pls.' Mot. to Dismiss, "Pls.' MTD," Dkt. No. 78.) On May 4, 2022, Defendant filed an opposition to the motion to dismiss. (Def.'s MTD Opp'n, Dkt. No. 84.) On May 11, 2022, Plaintiffs filed a reply to the motion to dismiss. (Pls.' MTD Reply, Dkt. No. 85.)

On April 20, 2022, Plaintiffs also filed two separate motions to strike the answer, so the Court instructed them to file a single motion. On April 29, 2022, Plaintiffs filed a motion to strike Defendant's counterclaims and affirmative defenses. (Pls.' Mot. to Strike. "Pls.' MTS," Dkt. No. 83.) On May 13, 2022, Defendant filed an opposition to the motion to strike. (Def.'s MTS Opp'n, Dkt. No. 86.) On May 20, 2022, Plaintiffs filed a reply. (Pls.' MTS Reply, Dkt. No. 88.)

//
//
//

## II. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted) and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by

3

the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### B. Motion to Strike under anti-SLAPP

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances." *Daniel v. Wayans*, 8 Cal. App. 5th 367, 379 (2017). "To determine whether a lawsuit or cause of action should be disposed of as a SLAPP suit, [California Code of Civil Procedure] section 425.16 establishes a two-part test." *Id.* First, the defendant must make a threshold showing that the challenged cause of action arises from protected activity. *Id.* "A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause of action fits one of the categories spelled out in section 425.16, subdivision (e)." *Id.* (internal quotation omitted). Second, if the defendant makes such a showing, the plaintiff must demonstrate a reasonable probability of prevailing at trial on the merits of the challenged causes of action. *Id.* at 380.

### C. Motion to Strike Affirmative Defenses

Federal Rule of Civil Procedures 8 requires that, when "responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it." Rule 12(f) provides that, on its own or on a motion from a party, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purposes of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). Notwithstanding, "[t]he Ninth Circuit has long held that '[t]he key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense.'" *Perez v. Gordon & Wong Law Grp., P.C.*, No. 11-CV-03323-LHK, 2012 WL 1029425, at *6 (N.D. Cal. Mar. 26, 2012)(quoting *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)).

Motions to strike, however, "are generally disfavored because the motions may be used as

delaying tactics and because of the strong policy favoring resolution of the merits." *Barnes*, 718 F. Supp. 2d at 1170 (citation omitted). Thus, once properly pled, a motion to strike an affirmative defense which alleges legal insufficiency will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Barnes*, 718 F. Supp. 2d at 1170 (N.D. Cal. 2010)(quoting *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984)). If a defense is stricken, "[i]n the absence of prejudice to the opposing party, leave to amend should be freely given." *Wyshak*, 607 F.2d at 826.

"Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12-CV-00846-LHK, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

### III. DISCUSSION

#### A. Defendant's Oppositions Violate Civil Local Rule 7-3(a)

As an initial matter, Defendant's oppositions are 44 and 51 pages, respectively. Under Civil Local Rule 7-3(a), oppositions are limited to 25 pages. Since Defendant is pro se, the undersigned declines to strike the pages in excess of 25, as requested by Plaintiffs. (*See* Pls.' MTS Reply at 1 n. 1.) That said, Defendant is advised that he is responsible for complying with the Civil Local Rules, the Federal Rules of Civil Procedure, and the undersigned's Standing Orders, and that any future violations may result in striking briefs, or portions thereof, or denying the relief requested without notice or opportunity to remedy the deficiency, which may result in judgment being entered against him.

Additionally, the district court has produced a guide for pro se litigants called *Representing Yourself in Federal Court: A Handbook for Pro Se Litigants*, which provides instructions on how to proceed at every stage of your case, including discovery, motions, and trial, which is available online (http://cand.uscourts.gov/prosehandbook) free of charge.

#### B. Counterclaims

Defendant brings 13 counterclaims for intentional infliction of emotional distress,

1  prospective economic advantage and relations, defamation, negligent interference with prospective
2  economic advantage, civil conspiracy, declaratory relief (two separate, but identical claims),
3  fraudulent and negligent misrepresentation, business disparagement, tortious interference with
4  business relations, extreme harassment, and attorneys' fees. (*See* Def.'s Counter-Compl. at ¶¶ 86-
5  170.)
6        Plaintiffs move to dismiss Defendant's counterclaims on the grounds that they are barred
7  by the litigation privilege. (Pls.' MTD at 3.)  Alternatively, Plaintiffs move to strike the
8  counterclaims pursuant to California's anti-SLAPP law. (Pls.' MTS at 3.)
9        The Court will first address the motion to dismiss.  California Civil Code § 47(b)'s
10 litigation privilege "generally protects from tort liability any publication made in connection with
11 a judicial proceeding." *Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 952, 154 P.3d 1003, 1005
12 (2007). The privilege applies to "any communication (1) made in judicial or quasi-judicial
13 proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of
14 the litigation; and (4) that [has] some connection or logical relation to the action." *Action
15 Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007).  The litigation
16 privilege is absolute in nature, and it applies to all publications "'irrespective of their
17 maliciousness.'" *Olsen v. Harbison*, 191 Cal. App. 4th 325, 333, 119 Cal. Rptr. 3d 460, 466
18 (2010) (citation omitted).
19       Here, Plaintiffs argue that Defendant's counterclaims are based on the filing of this
20 lawsuit, the issuance of a press release regarding the filing of this case, and efforts to serve process
21 in this action, which fall within the purview of the litigation privilege. (Pls.' MTD at 5.)  The
22 Court agrees.
23       In opposition, Defendant argues that the claims are not barred by the litigation privilege,
24 because the litigation privilege does not protect tortious acts. (*See* Def.'s MTD Opp'n at 11-12.)
25 Specifically, Defendant contends that Plaintiffs "contacted various financial institutions to
26 terminate their banking relationships with Gajjar so that Gajjar would not have the financial means

to litigate and fight Facebook." *Id.* at 13.  As evidence, Defendant merely provides letters[1] from financial institutions informing him that they are closing his accounts. (Def.'s MTD Opp'n at 13, Exs. B & C.)  Notably, these allegations are not included in Defendant's counterclaims, and alleging these facts in the opposition is insufficient.  Even so, the Court is unwilling to join in Defendant's intellectual leap, because, as Plaintiffs argue in their reply, there is a more plausible explanation: that the financial institutions discovered this lawsuit on their own. (*See* Pls.' MTD Reply at 3-4.)  In fact, Capital One's notice explicitly states that "Capital One discovered adverse past or present legal action involving an individual or entity associated with the account." (Def.'s MTD Opp'n, Ex. B.)  It does not say that Facebook and Instagram notified them.  Certainly, Defendant fails to plead facts that tend to exclude this more likely possibility, and, at the hearing, Defendant conceded that he did not currently know of any evidence to make his allegation plausible. *See Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (If two possible explanations exist, the plaintiff must provide facts that make their allegations plausible, such as offering facts that tend to exclude the defendant's alternative explanation.)  Thus, there is no evidence other than Defendant's belief that Plaintiffs are engaging in a "scorched-earth litigation strategy" to support his argument that the litigation privilege does not apply. (*See* Def.'s MTD Opp'n at 13.)

Furthermore, contrary to Defendant's assertions, every counterclaim concerns actions allegedly taken during the pendency of this litigation.[2]  For example, the second counterclaim for prospective economic advantage and relations alleges that the filing of this lawsuit has "disrupted Gajjar's relationships and business opportunities with its customers." (Def.'s Counter-Compl. ¶ 97.)  The third counterclaim for defamation alleges that the filing of this lawsuit and the press release are defamatory because he is not LeadCloak's alter ego, and the "statements were unnecessarily made publicly to numerous third parties to advance Counterclaim-Defendants'

---

[1] The correspondence is not attached to a supporting declaration. Even so, for the purposes of this motion, the Court will consider them to be true.
[2] The sixth counterclaim for unfair and frivolous lawsuit is not a valid claim and must be dismissed with prejudice. Also, the counterclaim for attorney's fees (No. 13) is a prayer for relief, rather than a cognizable claim, and must be dismissed with prejudice.

reputation and fame and to undoubtedly ruin Gajjar's business and relationship." (Def.'s Counter-Compl. ¶¶ 76-77, 104-105.) The twelfth counterclaim for "extreme harassment"[3] alleges that Plaintiffs "spent countless hours and dollars attempting to find Gajjar just to serve Gajjar the Complaint and Summons." (Def.'s Counter-Compl. ¶ 158.) Then, in attempting service, Plaintiffs "went as far as to try to bribe a doorman and a postal worker to get them to reveal Gajjar's location." *Id.* at ¶ 159. Defendant then alleges that he would not be surprised if "Facebook tracked the GPS coordinates of Gajjar's residence from the Facebook Application that was installed on his phone, and also listened to Gajjar's conversations through the phone's microphones without his permission and his knowledge." *Id.* at ¶ 160. The latter allegation is mere speculation while at the same time essentially conceding that he has agreed to the Facebook Terms, which may permit some location tracking.

Accordingly, the Court finds that Defendant's counterclaims are barred by the litigation privilege, and grants Plaintiffs' motion to dismiss. All current counterclaims based on the facts alleged are dismissed with prejudice, but Defendant is permitted to file a motion for leave to amend should he discover new facts in support of these or other counterclaims. The only counterclaims that are dismissed with prejudice in their entirety are the counterclaims for "unfair and frivolous lawsuit," "extreme harassment," and "attorney's fees," because these are not proper tort claims. Plaintiffs' motion to strike is DENIED IN PART as moot insofar as it seeks to strike Defendant's counterclaims under California's anti-SLAPP statute.

### C.   Motion to Strike under Rule 12(f)

An affirmative defense denies "plaintiff's right to recover, even if the allegations of the complaint are true." *J & J Sports Prods., Inc. v. Terry Trang Nguyen*, No. C 11-05433 JW, 2012 WL 1030067, at *3 (N.D. Cal. Mar. 22, 2012) (citation and internal quotations omitted). In other words, it is a defense even if Plaintiffs can satisfy all elements of their prima facie case. *See id.*

Plaintiffs argue that all 32 affirmative defenses must be stricken because they are "(1) improper negative defenses, (2) insufficiently pled under *Twombly-Iqbal*, (3) insufficiently pled

---

[3] This is not a cognizable tort claim.

8

1  under Rule 9(b) for affirmative defenses sounding in fraud or mistake, or (4) impertinent and bear
2  no relation to the Plaintiffs' breach of contract claim." (Pls.' Mot. at 16.)  In opposition, Defendant
3  argues that merely identifying the affirmative defenses satisfies the Ninth Circuit's "fair notice"
4  standard. (Def.'s Opp'n at 40.)

5  In the wake of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S.
6  544, 127 S.Ct. 1955 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), the
7  question is whether the plausibility pleading standard for complaints "redefines what constitutes
8  'fair notice' of an affirmative defense pled in an answer." *Perez*, 2012 WL 1029425, at *6.  While
9  neither the Ninth Circuit nor the Supreme Court has addressed this question, courts in this district
10 have consistently found that the *Twombly-Iqbal* standard applies to affirmative defenses. *See, e.g.,*
11 *Perez*, 2012 WL 1029425, at *6-8; *Barnes & Noble, Inc. v. LSI Corp.*, 2012 WL 359713, at *2
12 (N.D. Cal. Feb. 2, 2012); *Bottoni v. Sallie Mae, Inc.*, 2011 WL 3678878, at *2 (N.D. Cal. Aug. 2,
13 2011); *Barnes*, 718 F.Supp.2d at 1171-72; *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 10-945
14 CW, 2012 WL 1746848, at *3-4 (N.D. Cal. May 16, 2012).

15 Here, Defendant's affirmative defenses all suffer from some deficiency, which the Court
16 will briefly address below to assist Defendant in streamlining his amended answer.

17 **i.   Defense Nos. 2, 6, 8, 11, 14-15, and 17-18 are improper.**

18 Defenses that "constitute[] a denial of the claims and allegations" are not proper
19 affirmative defenses.  *J & J Sports Prods., Inc. v. Terry Trang Nguyen*, No. C 11-05433 JW, 2012
20 WL 1030067, at *3 (N.D. Cal. Mar. 22, 2012); *see also Barnes,* 718 F. Supp. 2d at 1174 ("Failure
21 to state a claim is not a proper affirmative defense but, rather, asserts a defect in [the plaintiff's]
22 prima facie case.")  Here, Plaintiffs asserted a single breach of contract claim, which requires: "(1)
23 a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) damages to plaintiff."
24 *Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277, at *7 (N.D. Cal. Aug. 28, 2020).  The following
25 defenses merely deny Plaintiffs can satisfy those elements, and, therefore, constitute a denial of
26 the claims and allegations.  Thus, the following defenses must be stricken without leave to amend:
27 Failure to State a Claim (No. 2), No Breach (No. 6), No damages (Nos. 8, 14, 17), Lack of
28 Acceptance (No. 11), Damages Caused by Third Parties (no. 15), and Failure of Plaintiff to

9

Disclose Material Fact (No. 18).

### ii. Nos. 5, 9, 19, and 29 bear no relation to the claim.

The Court further strikes without leave to amend those affirmative defenses which bear no relation to Plaintiffs' breach of contract claim, because they are impertinent. *Terry Trang Nguyen,* 2012 WL 1030067, at *2. First, the Communications Decency Act defense (No. 5) does not apply, because the statute only protects the interactive computer service from liability for user-generated content. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008). The service provider is, however, responsible for the content that it creates. *Id.* at 1162. Here, Defendant allegedly created the content rendering this defense inapplicable.

The ninth affirmative defense for No Reasonable Reliance is stricken because Plaintiffs need not prove reasonable reliance to prevail on a breach of contract claim. *LocusPoint Networks, LLC v. D.T.V. LLC*, No. 14-CV-01278-JSC, 2015 WL 5043261, at *10 (N.D. Cal. Aug. 26, 2015). Similarly, Defendant's defense of good faith (No. 19) is stricken because acting in good faith is not a defense to breach of contract. *See Facebook, Inc. v. Rankwave Co.*, No. 19-CV-03738-JST, 2020 WL 4460550, at *3-4 (N.D. Cal. May 1, 2020). Moreover, Defendant's affirmative defense for Defamation/Character Assassination (No. 29) is stricken, because Defendant's allegations that Plaintiffs engaged in defamation by issuing a press release saying that he violated the Terms is not a defense to breach of contract, rendering the defense impertinent. Finally, the "Additional Affirmative Defenses" (Def.'s Answer at 18) is stricken because a defendant cannot preserve their right to raise unknown affirmative defenses to avoid seeking leave to amend the answer once the facts that give rise to the unpleaded defenses are known. *See Thorium Cyber Sec., LLC v. Nurmi*, No. 3:19-CV-07669-WHO, 2020 WL 7260507, at *8 (N.D. Cal. Dec. 10, 2020).

Accordingly, Affirmative Defense Nos. 5, 9, 19, 29, and "Additional Affirmative Defenses" are stricken without leave to amend.

### iii. Fraud defenses particularity pleading requirement

Defendant pleads two affirmative defenses involving fraud: Fraudulent Conduct (No. 13) and Fraud and Illegality (No. 26). (Def.'s Answer at 12, 16). Rule 9(b) applies to affirmative

10

defenses that sound in fraud or mistake, which "requires that a party plead the 'who, what, when, where, and how' of the allegedly fraudulent acts." *Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 1330598, at *5 (N.D. Cal. Apr. 11, 2017) (citing Fed. R. Civ. P. 9(b)).

In support of his thirteenth affirmative defense of Fraudulent Conduct, Defendant makes the following allegations:

> The Complaint is barred on the grounds of Plaintiff's fraudulent conduct, including negligent and/or intentional misrepresentations made by Plaintiff to Defendant. Plaintiffs have deliberately suppressed facts. Plaintiff suppression of facts are not only a complete waste of the Court's time, but also constitute a breach of a counsel's attorney's fiduciary duty to the Court. Facebook tried to covertly gather evidence and to prove that LeadCloak was built to circumvent Facebook's Advertising networks. All sets of events reeks of entrapment. Facebook mischaracterized, misrepresented, humiliated, defamed and denigrated the Defendant by calling him a scammer. Indeed, the lawsuit is primarily based on allegations about an obsolete, preliminary, beta versions of the LeadCloak software that was never implemented once LeadCloak.com went live in December 2018.

(Def.'s Answer at 12.) As Plaintiffs argue, none of these factual allegations would support a defense to the breach of contract claim. (Pls.' MTS at 22.) In opposition, and without elaboration, Defendant argues that these allegations satisfy Rule 9(b), but he is mistaken. For example, Plaintiffs' pre-litigation investigation is not inherently fraudulent, and the undersigned is unclear as to how that could constitute entrapment.[4]

The entirety of Defendant's Fraud and Illegality Defense (No. 26) is that "[t]he Complaint, in whole or in part, is precluded by the doctrines of fraud and illegality." (Def.'s Answer at 16.) This is a legal conclusion that runs afoul of Rule 9(b).

Accordingly, these affirmative defenses are stricken with leave to amend. In amending, Defendant, must allege different facts that would provide a valid defense to a breach of contract claim. If Defendant cannot do so, he should not amend that defense. Should he discover new facts that would give rise to an affirmative defense in the future, he can seek leave to amend his answer at that time.

---

[4] Moreover, entrapment is generally only a defense to criminal charges.

11

#### iv. The remaining affirmative defenses do not put Plaintiffs on fair notice.

The remaining affirmative defenses (Nos. 1, 3-4, 7, 10, 12, 16, 20-25, 27-28, 30-32) generally consist only of bare statements reciting legal conclusions or fail to provide facts that explain why the asserted defense is a defense to the breach of contract claim. (*See* Def.'s Answer at 7-18.) To the extent that Defendant argues that Plaintiffs are aware of the nature of its affirmative defenses, "[t]here is no authority supporting the notion that the opposing party's knowledge of the general facts of the case excuses the omission of factual bases of pleading affirmative defenses." *LumaSense Techs., Inc. v. Advanced Eng'g Servs., LLC*, No. 20-CV-07905-WHO, 2021 WL 2953237, at *6 (N.D. Cal. July 14, 2021).

Accordingly, the remaining affirmative defenses run afoul of Rule 8 and must be stricken, but Defendant is granted leave to amend. Again, if Defendant cannot currently allege facts in support of every defense, he should not amend those defenses. Should he discover new facts that would give rise to an affirmative defense that is not pleaded in the amended answer, he may seek leave to amend at that juncture.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to dismiss Defendant's counterclaims (Dkt. No. 78) is GRANTED. The motion to strike (Dkt. No. 83) in GRANTED as to the affirmative defenses, but the motion to strike under anti-SLAPP is DENIED as moot. Defendant shall file an amended answer within **21 days** of this order, but he is only permitted to include those affirmative defenses for which leave to amend has been granted.

In amending the answer, Defendant is encouraged to contact the Federal Pro Bono Project's Help Desk for assistance—a free service for pro se litigants—by calling (415) 782-8982.

IT IS SO ORDERED.

Dated: June 17, 2022

KANDIS A. WESTMORE
United States Magistrate Judge